UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                  :

SHENG-WEN CHENG, *individually and on*  :
*behalf of a class of all others similarly*  :
*situated*,  :
                                  :
                      Plaintiff,   :
                                  :
               -against-   :
                                  :

UNITED STATES OF AMERICA,  :
                                  :
                      Defendant.  :
                                  :
-------------------------------------------------------X

                                      22-CV-10536 (VSB)

                                    **<u>OPINION & ORDER</u>**

<u>Appearances</u>:

Sheng-Wen Cheng
Federal Medical Center Rochester
Rochester, MN
*Pro se*

Jessica F. Rosenbaum
U.S. Attorney's Office
New York, NY
*Counsel for Defendant*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Plaintiff Sheng-Wen Cheng, incarcerated and proceeding pro se, brings this action against

the United States alleging that the inability of aliens with final orders of removal from applying

time credits earned under the First Step Act of 2018 (the "FSA"), 18 U.S.C. § 3632(d)(4)(E)(i)

(the "Removal Order Policy"), violates the Equal Protection and Due Process Clauses of the

Fifth Amendment, the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*, and

the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*[1]  Before me are

---

[1] Cheng also brought claims challenging the Bureau of Prison's ("BOP") policy of prohibiting aliens with

(1) the Government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure; (2) Cheng's motion for a preliminary injunction; (3) Cheng's motion

for judgment on the pleadings or, in the alternative, for summary judgment; and (4) Cheng's

motion for appointment of counsel.  Because Cheng's complaint fails to state a claim, the

Government's motion to dismiss is GRANTED.  Absent a viable claim, Cheng's motions for a

preliminary injunction, judgment on the pleadings, and appointment of counsel are DENIED.

## I.    Factual Background

On April 20, 2021, Sheng-Wen Cheng pleaded guilty to (1) major fraud against the

United States, in violation of 18 U.S.C. §§ 1031 and 2; (2) bank fraud, in violation of 18 U.S.C.

§§ 1344 and 2; (3) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R.

§ 240.10b-5, and 18 U.S.C. § 2; and (4) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  *See*

*United States v. Cheng*, No. 21-CR-261, (S.D.N.Y. Aug. 19, 2021), Doc. 33.  At sentencing,

former District Judge Alison J. Nathan sentenced Cheng to 72 months' imprisonment, followed

by three years' supervised release.  *Id.*  Judge Nathan also ordered that Cheng be removed from

the United States to the Republic of China (Taiwan) upon completion of his term of

incarceration.[2]  *Id.*, Doc. 34.

## II.    Procedural History

On December 12, 2022, Cheng filed this suit against the United States.  (Doc. 2

("Original Complaint").)  Four months later, the Government moved to dismiss the Original

---

immigration detainers from applying time credits earned under the FSA to their sentences (the "Detainer Policy").
(Doc. 31 ¶ 2.)  However, Cheng now concedes that he lacks standing to challenge the Detainer Policy and that, in
any event, those claims are moot.  (Doc. 56 at 4–7.)  I therefore dismiss Cheng's claims challenging the Detainer
Policy.

[2] Cheng's expected release date is September 27, 2025.  *See Find an inmate*, Fed. Bureau of Prisons, https://
www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

Complaint.  (Doc. 22.)  On June 8, 2023, Cheng filed an amended complaint and a motion for a preliminary injunction.  (Doc. 31 at 1–20 ("Amended Complaint" or "Am. Compl."); Doc. 31 at 21–51 ("Motion for Injunctive Relief" or "Mot. Inj.").)  The Government subsequently filed a renewed motion to dismiss on June 22, 2023.  (Doc. 40.)  On August 14, 2023, Cheng filed his opposition to the motion to dismiss.  (Doc. 56.)  Four days later, the Government filed its reply. (Doc. 60.)

The Government filed its opposition to Cheng's motion for Motion for Injunctive Relief on July 18, 2023.  (Doc. 52.)  One month later, Cheng filed his reply in further support of his preliminary injunction motion.  (Doc. 58.)

On August 18, 2023, Cheng filed a motion for appointment of pro bono counsel, (Doc. 62), as well as a memorandum in support, (Doc. 64).  On September 28, 2023, Cheng filed a motion for judgment on the pleadings or, in the alternative, for summary judgment.  (Doc. 70.) Cheng also filed a letter requesting that I take judicial notice of a case he filed in the District of Minnesota.  (Doc. 80.)

## III.   Legal Standards

### A.  *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "Where, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738

F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a

plausible claim supported by more than conclusory allegations.  *See Walker v. Schult*, 717 F.3d

119, 124, 130 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's

complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F.

Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alterations omitted).

### B. *First Step Act of 2018*

The FSA establishes a system to encourage inmates to participate in "evidence-based

recidivism reduction" programs and "productive activities." 18 U.S.C. § 3632(d).  Inmates who

complete these programs accrue time credits, which "shall be applied toward time in prerelease

custody [i.e., transfer to home confinement or placement at a residential reentry center] or

supervised release."  *Id.* § 3632(d)(4)(C).  Earned-time credits are applied when the inmate's

credits are "equal to the remainder of the prisoner's imposed term of imprisonment."  *Id.*

§ 3624(g)(1)(A).  Certain inmates are statutorily ineligible to apply earned time credits toward

time in prerelease custody or supervised release.  *Id.* § 3632(d)(4)(E).  As relevant here, federal

inmates who are "the subject of a final order of removal under any provision of the immigration

laws" cannot apply time credits toward their sentences.  *Id.* § 3632(d)(4)(E)(i).

### IV. <u>Discussion</u>

### A. *Motion to Dismiss*

The Government moves to dismiss Cheng's claims that the Removal Order Policy

violates:  (1) the Fifth Amendment's Equal Protection Clause[3]; (2) both procedural and

---

[3] The Supreme Court has incorporated the Fourteenth Amendment's Equal Protection Clause into the Fifth
Amendment.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

substantive due process under the Fifth Amendment; (3) the APA; and (4) the FTCA.  I address each in turn below.

### 1.  Equal Protection Clause

#### a.  Applicable Law

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Aliens with final orders of removal are not a protected class.  *See Graham v. Mukasey*, 519 F.3d 546, 549, 551 (6th Cir. 2008) (holding that an alien who was ordered to be removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) was not part of a "suspect class"); *see also Matthews v. Diaz*, 426 U.S. 67, 81–82 (1976) ("The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization."). Notwithstanding the fact that the FSA does not draw a distinction based on a constitutionally protected characteristic, a plaintiff may still pursue "an Equal Protection claim on one of two theories:  selective enforcement or class of one."  *Bunn v. City of Poughkeepsie*, No. 10-CV-2297, 2012 WL 1621563, at *3 (S.D.N.Y. May 9, 2012) (internal quotation marks omitted).

"To state a claim for selective enforcement, a plaintiff must allege facts supporting a conclusion that 1) he was 'treated differently from other similarly situated' comparators, and 2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (quoting *Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).  Similarly, a class-of-one

claim "requires the plaintiff to allege facts showing that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Analytical Diagnostic Labs., Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010)). "While a plaintiff is not required to proffer evidence of similarly situated [comparators] at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (internal quotation marks omitted); *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 603–04 (S.D.N.Y. 2010) ("[M]ore than a bare allegation that other [individuals] were treated differently is required" to survive a motion to dismiss).

> b. <u>Application</u>

Cheng pursues his Equal Protection claim on both theories:  selective enforcement and class of one.  The Amended Complaint does not include allegations that plausibly allege a claim for relief under either standard.  Critically, Cheng fails to show that he was treated differently from any similarly situated individual.  Although Cheng draws a distinction between himself and aliens without final orders of removal, (*see* Am. Compl. at 9 ("Regardless of having a final order of removal or not, all federal alien prisoners should have FSA earned time credits applied to their sentences.")), he has not demonstrated that he is, in fact, similarly situated to nonremovable aliens.  Nor has Cheng shown that (1) the differential treatment is based on impermissible considerations, or (2) treating him differently from aliens without final orders of removal lacks a rational basis.  To the contrary, prohibiting removable aliens from applying time credits to their sentences and releasing them into the community serves the legitimate purpose of reducing the risk that aliens facing deportation will flee.  The courts of appeals have repeatedly recognized

that aliens facing deportation have a heightened incentive to flee following their release from custody. *See, e.g.*, *Builes v. Warden Moshannon Valley Corr. Ctr.*, 712 F. App'x 132, 134 (3rd Cir. 2017) (holding that excluding ICE detainees from residential drug rehabilitation programs and community-based confinement is rationally related to legitimate BOP interest in reducing the flight risk posed by prisoners facing removal); *Gallegos-Hernandez v. United States*, 688 F.3d 190, 196 (5th Cir. 2012) (finding that excluding ICE detainees from halfway house placement is rationally related to preventing those detainees from fleeing).

It is similarly rational to prevent removable aliens from applying time credits to their sentences to facilitate their early deportation. Requiring defendants who commit aggravated felonies after entering this country illegally to serve their full sentence serves the rational legislative judgment to punish some individuals more severely than others. In the case of the fraud convictions at issue here, the judgment could be based on several grounds—including, the nature of the offense, the need to protect society, and the need to deter future criminal conduct—any one of which could supply the necessary rational basis. Although Cheng may disagree with Congress's choice to prohibit removable aliens from applying time credits earned under the FSA, this choice does not lack a rational basis.[4] Accordingly, the Government's motion to dismiss Cheng's Equal Protection claim (Count I) is GRANTED and this claim is DISMISSED.

---

[4] District courts have similarly held that the exclusion of certain offenses from the FSA does not violate the Equal Protection Clause. *See, e.g.*, *Sedlacek v. Rardin*, No. 23-CV-11899, 2024 WL 965607, at *4 (E.D. Mich. Mar. 5, 2024) (exclusion of distribution of child pornography does not violate Equal Protection); *Martinez-Palacios v. Garza*, No. 23-CV-42, 2023 WL 6540947, at *2, n.1 (N.D. Ohio Oct. 6, 2023) (exclusion of illegal re-entry by a previously deported alien after a felony conviction does not violate Equal Protection); *see also United States v. Powell*, No. 11-CR-205, 2023 WL 5489030, at *5 (E.D. Va. Aug. 24, 2023) (recognizing that there is a "clear rational basis for treating persons who have been convicted of the excluded offenses differently than persons who have been convicted of other offenses. The excluded offenses . . . are some of the most serious crimes punishable under federal law").

### 2. Due Process Clause

#### a. Applicable Law

To prevail on either a procedural or substantive due process claim under the Fifth Amendment, a plaintiff first needs to establish that he is being deprived of a "protected liberty interest." *See, e.g.*, *Baez v. Pinker*, 673 F. App'x 50, 52 (2d Cir. 2016) (recognizing that to prevail on either a procedural or a substantive due process claim, a claimant must "plausibly allege a protected liberty interest"). A liberty interest protected by the Fifth Amendment may arise directly from the Constitution or a federal statute. *See United States v. Johnson*, 703 F.3d 464, 469 (8th Cir. 2013) ("A liberty interest protected by the Fifth Amendment may arise from two sources: the Constitution or a federal statute." (citations omitted)); *see also Baldwin v. Hous. Auth. of City of Camden*, 278 F. Supp. 2d 365, 378 (D.N.J. 2003) (same). To have a protectable liberty interest, an inmate must have "a legitimate claim of entitlement to it." *Green v. McCall*, 822 F.2d 284, 288 (2d Cir. 1987) (internal quotation marks omitted).

#### b. Application

Cheng cannot demonstrate an entitlement to a liberty interest protected by the Fifth Amendment. Indeed, the FSA provides that a prisoner is "ineligible to apply time credits" where, as here, he is "the subject of a final order of removal under any provision of the immigration laws." 18 U.S.C. § 3632(d)(4)(E)(i). Absent a legitimate expectation to the application of FSA time credits, Cheng's Due Process claim must fail. Not surprisingly, every court to consider this issue has come to the same conclusion. *See, e.g.*, *Gant v. King*, No. 23-CV-1766, 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023) ("[P]risoners do not have a protected liberty interest in the application of FSA time credits."); *Mars v. Heisner*, No. 22-CV-01933, 2023 WL 4977335, at *7 (D. Ariz. June 26, 2023) (concluding that a prisoner does

not "have a constitutional right to 'apply' his FSA [time credits] in a specific manner"), *report and recommendation adopted*, No. 22-CV-01933, 2023 WL 4960411 (D. Ariz. Aug. 3, 2023); *see also White v. Warden*, No. 22-CV-2371, 2023 WL 4867562, at *10 (D. Md. July 31, 2023) (concluding that prisoner "did not have a liberty interest in the opportunity to earn" FSA time credits); *Bloom v. Fed. Bureau of Prisons*, No. 19-CV-21589, 2022 WL 341200, at *2 (D.N.J. Feb. 4, 2022) ("[P]risoners have no constitutionally protected liberty interest in an opportunity to earn additional good time or similar credits.").

Cheng's liberty interest was deprived by a sentencing proceeding and sentence that gave him all the process the Constitution required.  He suffers no new deprivation of liberty by not being able to apply FSA time credits toward his sentence.  As Judge Friendly observed, "there is a human difference between losing what one has and not getting what one wants." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10 (1979) (quoting Henry J. Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1296 (1975)).  Accordingly, the Government's motion to dismiss Cheng's Due Process claim (Count II) is GRANTED and this claim is DISMISSED.

### 3. Administrative Procedure Act

#### a. Applicable Law

An APA claim by an alien with a final order of removal based on his inability to apply time credits earned under the FSA falls well within the scope of claims subject to the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997 *et seq.  See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see, e.g.*, *Krilich v. Fed. Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003) (dismissing a federal prisoner's

challenge to prison conditions because "the APA falls within the broad sweep of claims subject to the exhaustion requirements of the PLRA").  There are three circumstances, however, in which a prisoner's failure to exhaust is excusable because administrative relief is "unavailable."  *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016).  An administrative procedure may be unavailable if it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmate," *id.* at 123, is "so opaque that it becomes, practically speaking, incapable of use," *id.*, or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *id.* at 124.

The BOP has enacted a four-step grievance process.  *See* 28 C.F.R. § 542.10 *et seq.* Prisoners must first attempt to informally resolve their problem by filing a BP-8 form.  *See Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020).  If the BP-8 is denied or goes unanswered, the prisoner must begin the formal grievance process by filing a BP-9 form with the prison warden.  *Id.*  A prisoner unsatisfied with the warden's response to his BP-9 form may appeal the ruling to the BOP's regional director using a BP-10 form.  *Id.* An appeal from a BP-10 denial must be filed using the BP-11 form, which is filed with the general counsel for the BOP.  *Id.*; *see McDowall v. Metro. Corr. Ctr.*, No. 08-CV-8329, 2010 WL 649744, at *5 (S.D.N.Y. Feb. 22, 2010) (specifying deadlines at each step of the grievance process).

b.  Application

Here, Cheng does not argue that he exhausted his administrative remedies.  Instead, he contends that the administrative-grievance process was unavailable to him because Counselor P. Grenier "ignored [his] BP-8 regarding the [G]overnment's Removal Policy" and "refused to

provide a BP-9 or BP-10 for [him] to appeal his non-response."  (Doc. 56 at 8.)  An unsuccessful

request for grievance forms does not, without more, relieve a prisoner of the exhaustion

requirement.  *See, e.g.*, *Silvagnoli v. Figueroa*, No. 12-CV-7761, 2014 WL 4160213, at *4

(S.D.N.Y. Aug. 19, 2014) (holding that an "alleged refusal to give Plaintiff a grievance form does

not render administrative remedies unavailable"); *Armand v. Simonson*, No. 12-CV-7709, 2016

WL 1257972, at *22 (S.D.N.Y. Mar. 30, 2016) ("[N]o argument could be made that

administrative remedies were not available to Plaintiff . . . by virtue of her allegation that . . . she

was ignored by correctional staff in asking for supplies and grievance forms." (alterations

omitted)).  Where grievance forms are denied, prisoners are still required to take "reasonable

efforts" to satisfy the PLRA's exhaustion requirement.  *Silvagnoli*, 2014 WL 4160213, at *4

(internal quotation marks omitted); *see, e.g.*, *Cruz v. Lee*, No. 14-CV-870, 2016 WL 1060330, at

*5 (S.D.N.Y. Mar. 15, 2016) (holding that where the prisoner was denied access to the grievance

procedure, he made reasonable efforts to exhaust by writing a letter to his counselor, speaking to

a mental health doctor, and writing to the Superintendent); *O'Connor v. Featherston*, No. 01-CV-

3251, 2002 WL 818085, at *2–3 (S.D.N.Y. Apr. 29, 2002) (holding that prisoner who was

refused grievance forms by prison officials but went on to write letters, file and then appeal the

denial of his FOIA request, and make several other inquiries, had made a reasonable attempt to

exhaust his administrative remedies).

Applying those principles here, I conclude that Cheng has failed to exhaust his

administrative remedies.  Critically, the Amended Complaint is silent concerning what further

efforts Cheng took to administratively grieve his claims.  Cheng does not allege, for example,

that he tried to obtain the required forms from anyone other than Counselor Grenier or that he

spoke to other officials about Counselor Grenier's conduct.  Indeed, Cheng does not even allege

that he requested the forms from Counselor Grenier more than once.  *See Indelicato v. Suarez*, 207 F. Supp. 2d 216, 219–20 (S.D.N.Y. 2002) (rejecting the plaintiff's claim that he made a reasonable effort by requesting a grievance form from his case manager three times).  Without any allegations as to what reasonable efforts, if any, Cheng made to exhaust his claims, Counselor Grenier's denial of grievance forms did not render administrative remedies unavailable.

Cheng's APA claim also fails on the merits.  Even assuming that Cheng's challenge to the BOP's implementation of Section 3632(d)(4)(E)(i) satisfies the APA's prerequisite of "final agency action," 5 U.S.C. § 704, Cheng's APA claim fails for the same reason as his Equal Protection and Due Process claims because Cheng does not allege any unconstitutional agency action separate and apart from what the language of section 3632(d)(4)(E)(i) requires.  Because there are no allegations of unconstitutional agency action beyond what section 3632(d)(4)(E)(i) says, the Government's motion to dismiss the APA claim (Count VII) must be GRANTED and the APA claim is DISMISSED.

### 4. Federal Tort Claims Act

#### a. <u>Applicable Law</u>

The United States possesses sovereign immunity and may not be sued without its consent.  *See Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020).  Although the FTCA provides a limited waiver of the Government's sovereign immunity for tort claims, 28 U.S.C. § 1346(b)(1), a plaintiff bringing a claim under the FTCA must first file a Standard Form 95 with the relevant BOP regional office, 28 U.S.C. § 2675(a); *see also Bakowski v. Hunt*, 150 F. App'x 19, 21 (2d Cir. 2005) (finding no exhaustion of FTCA claims until a plaintiff "present[s] his claim to the relevant government agency and await[s] either a final

administrative disposition or the passage of six months without such a disposition").  Failure to comply with this exhaustion requirement deprives federal courts of subject-matter jurisdiction over FTCA claims.  *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

b.  Application

Here, Cheng brings various tort claims against the United States under the FTCA, all arising from its failure to apply his FSA time credits to his sentence.[5]  With respect to these claims, Cheng argues that he "file[d] an administrative tort claim . . . to the North Central Regional Office on May 3, 2023."  (Doc. 56 at 14.)  However, Cheng initiated this suit five months earlier on December 12, 2022.[6]  (Doc. 2.)  Because the FTCA "requires that a claimant exhaust all administrative remedies before filing a complaint in federal court," Cheng's belated filing of Standard Form 95 is insufficient to confer this Court with jurisdiction.  *Id.*  This is true even where "the FTCA claims would be ripe if re-filed at the date of the court's decision." *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011); *see also Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877, at *5 n.3 (2d Cir. Dec. 17, 2021) (dismissing FTCA claim where the plaintiff who filed a Standard Form 95 "a week *after* initially filing suit" and "more than six months ha[d] passed since that form was filed").  Accordingly, the Government's motion to dismiss Cheng's tort claims brought under the FTCA (Counts III, IV, V, VI) is GRANTED and the claims are DISMISSED without prejudice.  *See Am. United Transp. Inc. v. W. Reg'l Union*,

---

[5] Although Cheng's claim of misrepresentation appears to challenge only the Detainer Policy, (Doc. 31 ¶¶ 49–53), I construe the claim as also challenging the FSA's Removal Order Policy.

[6] Although Cheng alleges that he filed the Standard Form 95 one month before he filed the Amended Complaint on June 8, 2023, (Doc. 31), there is nothing to suggest that Cheng received a "final administrative disposition" before he filed his amended pleading.  *Bakowski*, 150 F. App'x at 21.

569 F. Supp. 3d 151, 157 (E.D.N.Y. 2021) (collecting cases where courts in this Circuit have dismissed FTCA claim without prejudice for failure to exhaust administrative remedies).

### B.  *Motion for Preliminary Injunction*

Cheng also seeks to "enjoin [the Government] from continuing" its policy of barring federal alien prisoners with a final order of removal from having FSA earned time credits applied to their sentences."  (Mot. Inj. at 1.)  Motions for injunctive relief are governed by the four-factor test announced set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).  One of those four factors requires Cheng to demonstrate that he has a likelihood of prevailing on the merits of his claims.  *See id.* at 20.  As discussed above, I have determined that Cheng cannot succeed on the merits of any of his claims.  Accordingly, he necessarily cannot satisfy the requirements for injunctive relief.  *See Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957, 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (recognizing that the standard required to prevail on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss").  For this reason, Cheng's motion for injunctive relief is DENIED.

### C.  *Remaining Motions*

Having found that the Government's motion to dismiss should be granted, I conclude that Cheng's motion for (1) judgment on the pleadings or, in the alternative, for summary judgment, (Doc. 70), and (2) Cheng's motion for appointment of counsel, (Doc. 62), should be DENIED as moot.

### V.   <u>Conclusion</u>

For these reasons, the Government's motion to dismiss is GRANTED, and Cheng's motions for a (1) preliminary injunction, (2) judgment on the pleadings or, in the alternative, summary judgment, and (3) appointment of counsel are DENIED.

The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 40, 62, 70, and 80, close this case, and mail a copy of this Opinion & Order to Cheng at his current address.

SO ORDERED.

Dated:   March 26, 2024
         New York, New York

VERNON S. BRODERICK
United States District Judge